**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Thomas X. Kotab,<br><br>    Plaintiff<br><br>v.<br><br>Bureau of Land Management, et al.,<br><br>    Defendants | Case No.: 2:20-cv-01957-JAD-EJY<br><br>**Order Granting Plaintiff's Motion for Partial Summary Judgment**<br><br>[ECF No. 22] |

Avid hiker Thomas Kotab sues the Bureau of Land Management (BLM) under the Administrative Procedure Act (APA) for a declaration that the $2 processing fee it charges to access the mandatory online reservation system to visit the Red Rock Canyon Conservation Area during peak season violates the Federal Lands Recreation Enhancement Act (FLREA). The FLREA limits the types of fees that BLM may charge to an enumerated list of "recreation fees" and establishes public-notice requirements for their adoption. Kotab theorizes that this processing fee violates the FLREA because it was imposed without satisfying the act's public-notice requirements. BLM maintains that this fee is not a recreation fee but rather a separately authorized commission paid to a third-party contractor. Kotab moves for summary judgment on this issue of statutory interpretation.[1] Because I find that this processing fee is a recreation fee under the FLREA, and it is undisputed that BLM bypassed the public-participation process in implementing it, I grant Kotab's motion.

---

[1] ECF No. 22.

**Background**

BLM manages the Red Rock Canyon National Conservation Area, a recreation site bordering Las Vegas that is known for its distinctive red-sandstone peaks and stunning scenic-loop drive.[2] "Admission into the nation's national forests is free,"[3] but the FLREA authorizes the Secretary of the Interior to charge certain recreation fees for using federal recreational lands and waters,[4] and it gives the public opportunities to participate in the imposition of new recreation fees.[5] BLM has long charged an FLREA-authorized "standard amenity recreation fee" for visitors to access the scenic loop and the amenities along that drive.[6]

**A.    The $2 processing fee**

In September 2020, BLM announced a change in policy for visitors to Red Rock: it would now require patrons to make "timed[-]entry reservations" to visit the park during the "mild weather" months of the year.[7] These "mandatory" reservations can only be secured online through the website recreation.gov, and BLM requires people visiting the park by car to pay a "$2 processing fee" in addition to the standard amenity recreation fee to access the scenic loop.[8] According to BLM, the reservation-and-fee system is meant to address "capacity issues during

---

[2] ECF No. 18 at ¶ 11.

[3] *Bailey v. United States*, No. 19-5541, 2020 WL 2565318, at *1 (6th Cir. Feb. 28, 2020) (unpublished) (citing 16 U.S.C. § 6802(e)(2); *Scherer v. U.S. Forest Serv.*, 653 F.3d 1241, 1242 (10th Cir. 2011)).

[4] 16 U.S.C. § 6801(1).

[5] *Id.* at § 6803(c).

[6] ECF No. 32-2 at 1.

[7] Administrative Record (AR) 1–2.

[8] ECF No. 32-2 at 3. Visitors who hold a recreation pass that normally ensures free entry into the park still must pay the $2 processing fee. *Id.*

busy seasons" and "streamline entry, improve safety, and help [BLM] effectively protect resources."[9] This policy went into effect on November 3, 2020, and remains in effect today.[10]

Recreation.gov is the byproduct of a contract between various federal agencies[11] and private company Booz Allen Hamilton establishing "Recreation One Stop," a program that primarily creates an online-reservation system for recreation-fee areas and special recreation permits charged under the FLREA's authority.[12] This fee-management contract permits third party Booz Allen to charge a commission for its services on a per-reservation basis, and funding for the program "is derived directly through reservation sales."[13] The contract establishes an interagency financial management office to "manage collection of contract costs and payment of contract invoices."[14] The processing fees are standardized across agencies under the contract and are based on "the type of inventory being sold (for example[,] a campsite reservation) and the channel through which the transaction was made (for example, online or on the phone)."[15] BLM "has no involvement in deciding the amount of processing fee charged per reservation."[16] The processing fees "are collected in a United States Treasury account and remitted on a monthly

---

[9] AR 1.

[10] *Id.*; ECF No. 32-2 at 3.

[11] The U.S. Department of Agriculture, U.S. Forest Service, BLM, the National Park Service, the U.S. Fish and Wildlife Service, and the Bureau of Reclamation are parties to this contract. AR 43–120 (signed copies of interagency memorandum of understanding).

[12] ECF No. 32-1 at 3–17 (Interagency memorandum of understanding for recreation one-stop program management and execution).

[13] ECF No. 32-1 at 4, 8.

[14] *Id.* at 8.

[15] *Id.* at 2.

[16] ECF No. 32-2 at 3 (Travers declaration).

3

basis after the contractor has invoiced the Forest Service for the total number of transactions committed."[17]  No part of the processing fee is remitted to BLM.[18]

### B. Procedural posture

I previously determined that Kotab has standing to bring this suit as an avid hiker who uses the park on a regular basis,[19] but I dismissed his claims alleging APA violations under the Red Rock Canyon National Conservation Area Establishment Act of 1990, the National Environment Protection Act, and the Federal Land Policy and Management Act.[20]  Kotab's single remaining claim challenges BLM's authority to assess the $2 processing fee under the FLREA.  He moves for summary judgment on this claim, theorizing that this fee could not be implemented without BLM first satisfying the public-participation requirements for recreation fees under the FLREA, which it did not do.[21]  BLM opposes the motion and contends that the processing fee is not a recreation fee and thus not subject to the FLREA's pre-adoption procedures.[22]

## Discussion

Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[23]  "In deciding whether to grant summary judgment on an APA challenge,

---

[17] ECF No. 32-1 at 2.
[18] *Id.*
[19] ECF No. 26.
[20] *Id.*
[21] ECF No. 22.
[22] ECF No. 32.
[23] 5 U.S.C. § 706(2)(A).

the district court 'is not required to resolve any facts.' Instead, the court simply determines 'whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"[24] "At all times, the plaintiff carries the burden of showing that any decision or action made by the agency was arbitrary and capricious."[25]

**A.   The $2 processing charge is a "recreation fee" under the FLREA.**

Kotab posits that this $2 fee is a recreation fee for which the FLREA imposes a pre-adoption, public-participation requirement. BLM responds that the $2 fee is not a recreation fee but rather a completely different type of fee that is exempt from that requirement because (1) it is paid to Booz Allen for managing the recreation.gov reservation system and (2) BLM is authorized to enter into fee-management agreements "for the purpose of obtaining fee[-]collection and processing services."[26] This dispute is purely one of statutory interpretation.

Interpretation of an administrative agency's guiding statute is a two-step process.[27] "First, always, is the question [of] whether Congress has directly spoken to the precise question at issue."[28] Keeping in mind that the "legislature says in a statute what it means and means in a statute what it says,"[29] the court's inquiry "begins with the statutory text" and "ends there as well if the text is unambiguous."[30] But if Congress "has not directly addressed the precise question at

---

[24] *Friends of Animals v. Silvey*, 353 F. Supp. 3d 991, 1003 (D. Nev. 2018) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)).

[25] *John v. Sec'y of Interior*, 350 F. Supp. 3d 945, 949 (D. Nev. 2018) (citing *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)).

[26] ECF Nos. 19 at 9; 21 at 5.

[27] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

[28] *Id.*

[29] *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)) (internal quotation marks omitted).

[30] *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (cleaned up).

issue," then "the question for the court is whether the agency's answer is based on a permissible construction of the statute."[31]

### 1.  *The FLREA imposes strict limits on the types of fees that BLM can impose.*

Section 6802(a) of the FLREA unambiguously limits the fees that an agency in the Department of Interior may charge to "recreation fees,"[32] allowing the Secretary of the Interior to "establish, modify, charge, and collect recreation fees at Federal recreational lands and waters."[33] Section 6801(8) defines the term "recreation fee" to include just four types of charges: "an entrance fee, standard amenity recreation fee, expanded amenity recreation fee, or special recreation permit fee."[34] Each fee type is further defined in section 6801, and the FLREA imposes restrictions on the imposition of those fees. For example, section 6802(d) prohibits BLM from charging entrance fees to any of the federal lands it manages.[35] Recreation fees also cannot be charged "solely for parking," "for persons who are driving through" federal land, or "for the use of overlooks or scenic pullouts.[36] The statute further directs the Secretary of the Interior to "establish the minimum number of recreation fees and . . . avoid the collection of multiple or layered recreation fees for similar uses, activities, or programs."[37]

---

[31] *Chevron*, 467 U.S. at 843.
[32] *See generally* 16 U.S.C. §§ 6801–6814.
[33] 16 U.S.C. § 6802(a).
[34] *Id.* at § 6801(8).
[35] *Id.* at § 6802(e)(2).
[36] *See generally id.* at § 6802(d)(1).
[37] *Id.* at § 6802(c).

### 2. The FLREA's authorization of fee-management agreements with third parties does not create an additional category of chargeable fees.

BLM contends that it can charge a fee that falls outside of this detailed and proscriptive list of recreation fees if that fee is a commission for processing services.[38] It relies primarily on section 6805 of the act, which authorizes the Secretary of the Interior to "enter into a fee management agreement, including a contract, which may provide for a reasonable commission, reimbursement, or discount" "[w]ith any governmental or nongovernmental entity . . . for the purpose of obtaining fee collection and processing services, including visitor reservation services."[39] BLM argues that the processing fee that Kotab challenges isn't a recreation fee subject to the act's public-participation requirements, but rather a commission separately authorized by section 6805.[40]

BLM's interpretation grossly overstates the plain-language effect of section 6805. While this provision permits agencies to contract with third parties to provide visitor-reservation services, and it allows third parties to collect a commission for those services, it does not authorize an agency to pass off that commission to the public as a separate, non-recreation fee. Rather, the entire statutory scheme limits the fees an agency may charge to "recreation fees" and anticipates that any commissions charged for visitor-reservation services will be paid from the revenue collected by those fees.[41]

---

[38] ECF No. 32 at 6, 11.

[39] 16 U.S.C. § 6805(a), (a)(1).

[40] ECF No. 32 at 11.

[41] The statute also provides for revenue through agency passes, like the annual America the Beautiful Interagency pass. *See* 16 U.S.C. § 6804. Those provisions are not at issue here, and regardless of whether visitors pay the Red Rock amenity fee to enter Red Rock or use their annual pass, they must still pay the $2 processing fee.

7

Take, for example, the FLREA provision regulating expenditures—section 6807.  BLM points to this provision to demonstrate that the statute allows agencies to "use the revenue derived from [a] recreation fee for a variety of purposes, including maintenance, environmental compliance, and health and safety measures."[42]  But that same provision specifies that recreation fees may also be used to pay for "a fee management agreement established under section 6805(a) of this title *or a visitor reservation service*."[43]  And in the provision concerning the distribution of recreation fees, the FLREA dictates that all "other amounts collected at other locations, *including recreation fees collected by other entities or for a reservation service*, shall remain available, without further appropriation, until expended in accordance with guidelines established by the Secretary."[44]  When all of these provisions are read together, the statute can only be interpreted one way: fees charged for visitor reservations—even if paid to third parties under a fee-management agreement—must be incorporated into statutorily authorized recreation fees; they cannot be assessed as some other category of fee.

**B.    Even if the statute were ambiguous, BLM's interpretation is unsupportable.**

Even if the FLREA could be read as silent on BLM's ability to charge fees not considered "recreation fees," the FLREA's legislative history suggests that the agency is not authorized to charge this unvetted $2 processing fee.  The FLREA was enacted in response to public backlash against its predecessor, the Recreational Fee Demonstration Program, which allowed the Forest Service to charge and collect admission fees "for the use of outdoor recreation

---

[42] ECF No. 32 at 8.
[43] 16 U.S.C. § 6807(a)(F) (emphasis added).
[44] *Id*. at § 6806(c)(3).

sites, facilities, visitor centers, equipment, and services."[45] The public opposed those fees as overly broad, complaining that the Forest Service could collect them from people who wanted access to "undeveloped land, not services and amenities."[46] So "Congress drafted the [FLREA], an 'overly prescriptive' regime designed 'to alleviate concerns of those who no longer trust certain federal land management agencies with the recreation[-]fee authority.'"[47] And the FLREA is certainly overly prescriptive—it outlines in detail the specific instances in which each type of recreation fee can or cannot be charged.

BLM's interpretation of the FLREA as allowing the collection of unenumerated fees if characterized as a commission under a fee-management agreement with a third party would leave a giant loophole in Congress's carefully managed scheme. For example, the act prohibits agencies from charging a recreation fee "solely for parking."[48] Under BLM's logic, it could require visitors to reserve parking spaces for a $2 processing fee, as long as that $2 fee is collected as a commission for a third party. Even if that fee is technically "for" fee-collection

---

[45] Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104–34, tit. III, § 315(b)(1)(1996).

[46] *Adams v. U.S. Forest Service*, 671 F.3d 1138, 1141 (9th Cir. 2012).

[47] *Id.* (quoting H.R. Rep. 108-790(I), 108th Cong., 2d Sess. 2004 (Nov. 19, 2004), 2004 WL 2920863, at *18)). BLM cites to other legislative history that it contends supports its ability to charge processing fees that aren't subject to the FLREA. Nothing it cites has that effect. BLM cites a portion of H.R. Rep. 108-790(I) in favor of § 6805, which allows agencies to enter into cooperative agreements to collect fees and implement reservation services. ECF No. 32 at 9. Nothing in that quote or the rest of the report indicates that Congress intended those agreements to impose visitor-paid fees separate from recreation fees. BLM also notes that the legislative history "contains numerous references to the reservation system contractor's providing a recreation fee processing fee." *Id.* at 14 (citing S. Hrg. 114-345). At the hearing BLM cites, the only senate references to the processing fee were negative ones, in which senators called into question the reasonableness of $9 processing fees to reserve campsites that are charged in addition to the applicable recreation fees. *See* S. Hrg. 114-345 at 35. These offhand discussions do not evince congressional intent to authorize such fees.

[48] 16 U.S.C. § 6802(d)(1)(A).

and processing services and remitted to a third party, it is still a fee—imposed by BLM—to park. Such a scheme would run afoul of the FLREA's prohibition on fees for parking. As I explained in my prior order denying BLM's motion to dismiss this claim, "[t]he Ninth Circuit has long proscribed agency interpretations of the FLREA that 'give the agency complete discretion to dictate a fee's so-called purpose,' thus allowing it to 'entirely evade the prohibition' on certain fees 'by simply declaring that its fees are 'for' something else.'"[49]

None of BLM's proffered explanations to justify treating the processing fee as something other than a recreation fee saves its interpretation. BLM attempts to distinguish the processing fee from recreation fees by explaining that, while all fees "are temporarily deposited into an account at the Department of the Treasury," the recreation fee proceeds are remitted to BLM for use to manage Red Rock, but the processing fee proceeds are remitted directly to Booz Allen.[50] So BLM appears to theorize that, because processing-fee proceeds don't first stop in BLM's account, the $2 charge cannot be a recreation fee. But the fee-collecting-and-remitting system BLM describes is expressly contemplated by the statute's provisions for handling *recreation* fees. Section 6806 directs the Secretary of the Treasury to establish accounts for each federal land-management agency and specifies that "other amounts" not spent at a local site, "including recreation fees collected . . . for a reservation service, shall remain available, without further appropriation, until expended in accordance with guidelines established by the Secretary."[51] So

---

[49] ECF No. 26 at 14 (quoting *Adams*, 671 F.3d at 1145).

[50] ECF No. 32 at 8.

[51] 16 U.S.C. § 6806(c)(3).

the fact that these processing fees are expended separately from the Red Rock recreation fees does not indicate that they should be treated as a separate fee category.[52]

And regardless of how the fees are divided after they are charged, whatever happens on the backend is not the relevant moment in the processing fee's journey from park visitor to Booz Allen. It is only relevant that BLM permits a scheme that requires a visitor to pay a fee before visiting the park. Regardless of where that fee ends up or how it got there, functionally, it is a fee charged to access the amenities at Red Rock.

BLM also argues that the interagency contract with Booz Allen "supports the addition of a processing fee to the full cost of the reservation transaction as a reasonable commission for providing the online platform."[53] But the fact that a contract may permit fees not authorized by statute does not make those fees lawful.[54] Even if it could, this contract does not support BLM's statements because it does not provide for directly charging visitors a processing fee. Instead it contemplates that commissions will be taken "*from the gross recreation fee revenue* collected from customers,"[55] further suggesting that even the contracting parties saw this processing fee as a recreation fee under the FLREA.

---

[52] ECF No. 32-1 at 2 (DeLappe declaration, explaining that the processing fees "are collected in a United States Treasury account and remitted on a monthly basis after the contractor has invoiced the Forest Service for the total number of transactions committed").

[53] ECF No. 32-1 at 2.

[54] Indeed, the contract specifically states that "nothing [in it] is intended to alter, limit, or expand the agencies' statutory and regulatory authority." ECF No. 32-1 at 13.

[55] ECF No. 32-1 at 4. *See also id.* at 8 ("The contract costs will largely be based on a per reservation transaction basis. The [program's] Financial Management Office will manage collection of contract costs and payment of contract invoices. Remaining *recreation funds* will be distributed to the respective agencies in accordance with participating Agency directives." (emphasis added)).

Lastly, BLM asks the court to afford *Chevron* deference to its characterization of this fee in its "Instructional Memorandum 2018-056" concerning the launch of recreation.gov:

> Recreation.gov contract costs are primarily paid by the user through transaction fees collected by the contractor when a reservation or purchase is made. For the BLM (and some other agencies), the transaction fees are added on the time of checkout. Although paid by the customer, these fees are not considered recreation use fees and are thus not subject to approval by a Recreation Resource Advisory Council under the [FLREA]."[56]

Because I find that the statute is unambiguous, I need not consider this interpretation in BLM's instructional memorandum. But even if the statute were ambiguous, this memorandum wouldn't be entitled to any deference because *Chevron* deference is afforded only to agencies that have statutory authority to promulgate rules carrying the force of law, and the FLREA doesn't give BLM such authority.[57] BLM points to *United States v. Mead Corporation* to argue that its interpretation is still entitled to such deference although the interpretation "has not undergone formal notice-and-comment rulemaking."[58] But the Supreme Court in *Mead* emphasized that agency interpretations should only receive *Chevron* deference if there are "other circumstances reasonably suggesting that Congress" "meant to delegate authority" to the agency to issue those interpretations with the force of law.[59] "Interpretations contained in policy statements, agency

---

[56] ECF No. 32 at 14.

[57] *See EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 257 (1991) (declining to afford agency interpretation *Chevron* deference where congressional delegation did not include the power to "promulgate rules or regulations").

[58] ECF No. 32 at 14 (citing *U.S. v. Mead Corp.*, 533 U.S. 218, 230–31 n.13 (2001)).

[59] *Mead*, 533 U.S. at 231.

manuals, and enforcement guidelines" are "beyond the *Chevron* pale."[60]  This internal instructional manual is precisely such an interpretation.

When *Chevron* does not apply, the degree of deference that an agency interpretation merits will "vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position."[61]  The BLM memorandum lacks most of these hallmarks.  It merely states BLM's interpretation that processing fees are "not considered recreation use fees" with no legal analysis or persuasive argument to support its conclusory statement.  The agency's bald interpretation does not make this processing fee something other than a recreation fee.

**C.    BLM did not comply with the FLREA's public-participation requirements before imposing the processing fee at Red Rock.**

Kotab contends that the processing fee, properly considered a recreation fee, "is required to go through the public notice, comment and meeting process and has to have this increase approved by the Recreation Resource Advisory Council."[62]  He's partially right.  Because Red Rock is already a "recreation fee area" under the act, BLM is only required to "publish notice of a new recreation fee or a change to an existing recreation fee . . . in local newspapers and publications located near the site at which the recreation fee would be established or changed."[63]  The statute also provides for the submission of proposed recreation fees to the Recreation

---

[60] *Id.* at 234.

[61] *Id.* at 228 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)); *see also MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 229 (1994); *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 52 (D.D.C. 2014) (collecting cases demonstrating that courts assess the persuasiveness of an agency's interpretation based on such factors as the agency's thoroughness, consistency, formality, or expertise in issuing the interpretation).

[62] ECF No. 22 at 9.

[63] 16 U.S.C. § 6803(b).

13

Resource Advisory Committee for review and recommendations.[64] Changes to recreation fees are thus not subject to notice-and-comment procedures generally associated with agency rulemaking. But BLM does not contend that it has met the less strenuous public-participation procedures required by the FLREA, and Kotab insists that it has not. The administrative record contains no indication that BLM took any action to inform the public of these fees beyond issuing an online press release approximately one month before it implemented the change. Because the record does not show that BLM complied with the FLREA's public-participation requirements before imposing this $2 processing fee, I find that this charge was adopted in violation of the statute.

## Conclusion

IT IS THEREFORE ORDERED that Kotab's motion for partial summary judgment **[ECF No. 22] is GRANTED**. I direct the Clerk of Court to

- **ENTER FINAL JUDGMENT** in favor of the plaintiff, **declaring under the Administrative Procedure Act that the $2 processing fee for the Red Rock reservation system is a "recreation fee" under the Federal Lands Recreation Enhancement Act, 16 U.S.C. § 6801 et seq., and was not adopted in compliance with that act's procedures for adopting new recreation fees**; and
- **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
March 31, 2022

---

[64] *Id.* at § 6806(d).